IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

**MAX SHELTON, Receiver for Forest**
**Hill Funeral Home and Park-East, LLC,**

                        **Plaintiff,**

v.                                                                                          No. 2:09-cv-02258-STA-cgc

**MARK ZAUSMER, as Conservator for**
**certain cemeteries domiciled in the State**
**of Michigan, and MIDWEST MEMORIAL**
**GROUP, LLC,**

                        **Defendant.**

_____

**REPORT AND RECOMMENDATION ON DEFENDANT MARK ZAUSMER'S**
**MOTION TO DISMISS**

**REPORT AND RECOMMENDATION ON DEFENDANT MIDWEST MEMORIAL**
**GROUP, LLC'S MOTION TO DISMISS**

_____

Before the Court are Defendant Mark Zausmer's ("Zausmer") Motion to Dismiss (D.E. #8) and Defendant Midwest Memorial Group, LLC's ("MMG") Motion to Dismiss (D.E. #9). Both motions assert that the Court lacks personal jurisdiction. The instant motions were referred to United States Magistrate Judge Charmiane G. Claxton for Report and Recommendation. (D.E. #28). For the reasons set forth herein, the Court RECOMMENDS that Zausmer's Motion to Dismiss be GRANTED and that MMG's Motion to Dismiss be GRANTED.

    **I. Introduction**

Plaintiff Max Shelton ("Shelton") initiated this case in his capacity as Receiver for Forest Hill Funeral Home and Memorial Park East, LLC ("Forest Hill"), which operates cemeteries in

Shelby County, Tennessee. Compl. at 1. The Complaint alleges that in December 2004, an entity called Indian Nation, LLC ("Indian Nation") purchased Forest Hill and that an individual named Clayton Smart ("Smart") held a ninety-five percent equity interest in Indian Nation. Compl. ¶¶ 23-24. As required by law, the owners of Forest Hill were responsible for properly managing certain statutorily mandated trust funds to satisfy pre-need arrangement contracts, cemetery merchandise and services agreements, and to provide for improvement and maintenance of cemeteries. Id. ¶ 20. However, following the purchase of Forest Hill, Smart and several co-conspirators allegedly initiated a scheme to divest the Forest Hill trust funds to their own personal benefit. Id. 26-39. The Complaint states that these diverted funds from the Tennessee cemetery trust funds were co-mingled with trust funds diverted from Michigan cemeteries also owned by Smart. Id. ¶¶ 34-35.

On December 18, 2006, the Michigan Cemetery Commissioner filed a Verified Complaint for Injunctive Relief and Petition for Appointment of Conservator in Michigan. Id. ¶ 7. The Michigan court appointed Zausmer as Conservator of the Michigan cemeteries and their management companies owned by Smart. Id. ¶ 9. Over a year later, on February 7, 2008, the Michigan court authorized Zausmer to sell the Michigan cemeteries to Detroit Memorial, which subsequently became MMG. Id. ¶ 42. On May 2, 2008, the Michigan court entered an order approving the Closing Agreement in the sale transaction to MMG. Id. ¶ 43. As part of the sale transaction, the Michigan court specifically held that, with the exception of certain liabilities inapplicable to the present case, that MMG is exculpated from all liability relative to the Michigan cemeteries. Id., Exh. B., at 3. Following the completion of the sale of the Michigan cemeteries to MMG, Zausmer was released of his duties as Conservator.

As a result of the alleged illegal conduct by Smart and his co-conspirators, Shelton claims

in the instant case that Zausmer and MMG possess funds that are subject to a claim by the Tennessee cemeteries under Shelton's control as Receiver. Id. ¶ 47-49. On May 19, 2009, MMG and Zausmer each filed a Motion to Dismiss, asserting that the Court lacks personal jurisdiction because the defendants have never purposely availed themselves of the benefits and protections of Tennessee law.

As to Defendant Zausmer, he asserts that he is a Michigan resident and attorney licensed to practice in Michigan. Zausmer's law firm has no offices in the State of Tennessee, and Zausmer states that he did not transact any business as Conservator for the Michigan cemeteries or negotiate the sale of the Michigan cemeteries in the State of Tennessee. Zausmer states that the Closing Agreement and Asset Purchase and Sale Agreement for the sale of the cemeteries to MMG specifically provided that they would be construed and enforced in accordance with the laws of Michigan and that the parties each submitted to exclusive jurisdiction of the appropriate Michigan state court. Zausmer contends that his only connection to Tennessee in his role as Conservator was to observe a hearing in chancery court, after which he spoke with Shelton to discuss their respective legal actions and ways to cooperate in pursuing their respective conservatorship and receivership. Zausmer affirms that he has never entered an appearance in any litigation in Tennessee in regard to any of the cemeteries for which Shelton is the Receiver, that he has never been a party or otherwise involved in any of the Tennessee litigation, and that he has never pursued any remedies in Tennessee state court in relation to his conservatorship.

As to Defendant MMG, it is a Delaware limited liability company with its principal place of business in Michigan. MMG does not own cemeteries or other real or personal property in Tennessee, does not have offices or employees in Tennessee, does not transact business in

Tennessee, does not solicit customers or otherwise advertise its services in Tennessee, and does not direct its cemetery business or cemetery services at Tennessee or its residents. MMG states that its purchase of the Michigan cemeteries from Zausmer took place entirely outside of Tennessee.

**II. Analysis**

The sole issue presented in the instant motions is whether the Court has personal jurisdiction over MMG and Zausmer. "A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant." Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991). "A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." Bridgeport Music, Inc. v. Still N The Water Publishing, 327 F.3d 472, 477 (6th Cir. 2003).

"In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." American Copper & Brass, Inc. v. Mueller Europe, Ltd., 452 F. Supp. 2d 821, 826 (W.D. Tenn. 2006) (Donald, J.); see also Feild v. Graffagnino, 514 F. Supp. 2d 1036, 1040 (W.D. Tenn. 2007) (McCalla, C.J.); Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 966 (W.D. Tenn. 2004) (Breen, J.). Thus, as the "'Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause,'" the Court should address only whether exercising personal jurisdiction over a defendant is consistent with federal due process requirements. Bridgeport Music, Inc., 327 F.3d at 477

4

(quoting Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002).

Under the Due Process clause of the United States Constitution, "personal jurisdiction over a defendant arises 'from certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Reynolds v. Int'l Amateur Ath. Fed'n, 23 F.3d 1110, 1116 (6th Cir 1995) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (alterations in original). "Depending on the type of minimum contacts in a case, personal jurisdiction can be either general or specific." Reynolds, 23 F.3d at 1116.

"General jurisdiction exists when a defendant's 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" Intera Corp., 428 F.3d at 615 (quoting Bird, 289 F.3d at 873). "An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." Intera Corp., 428 F.3d at 615. The Sixth Circuit utilizes a three-prong test for determining whether specific jurisdiction may be exercised within the scope of federal due process protections. Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." Id. "Second, the cause of action must arise from the defendant's activities there." Id. "Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Id.

The purposeful-availment requirement is the "*sine qua non*" of specific personal jurisdiction. Southern Machine Co., 401 F.2d at 381-82. Purposeful availment exists where a defendant has

contacts with the forum state that proximately result from actions taken by the defendant himself that create a substantial connection with the forum state. Burger King v. Rudzeewicz, 471 U.S. 462, 475 (1985); see also Reynolds v. Int'l Amateur Ath. Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1994). Purposeful availment is essential because it "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Furthermore, the purposeful-availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475 (citations and internal quotations omitted).

The "arising from" prong of the specific personal jurisdiction analysis requires that "the operative facts of the controversy arise from the defendant's contacts with the state." Intera Corp., 428 F.3d 605, 617 (6th Cir. 2005). Although physical presence in the state is unnecessary, a defendant must purposely direct its communications into the forum, and those communications must "form the heart of the cause of action." Id. at 617-18. The locus of any alleged monetary injury is immaterial to the "arising from" analysis, as long as the obligation did not arise from a privilege the defendant exercised in the forum state. LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1303 (6th Cir. 1989) (citing Hanson v. Denckla, 357 U.S. 235, 252 (1958)).

The reasonableness prong of the specific personal jurisdiction analysis requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make exercise of jurisdiction over the defendant reasonable." Southern Machine Co., 401 F.2d at 381.. The reasonableness analysis requires the Court to consider

the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and other states' interests in securing the most efficient resolution of the controversy.  Intera Corp., 428 F.3d at 618.

As to whether the Court has personal jurisdiction over Zausmer and MMG, the parties agree that the Court does not have general personal jurisdiction, as there is no evidence that demonstrates continuous or systemic contacts to the forum state of Tennessee.  Thus, the Court must focus its analysis on whether specific personal jurisdiction exists.

With respect to the purposeful-availment prong, the Court finds that neither Zausmer nor MMG engaged in any conduct to purposefully avail themselves of the privileges of acting in Tennessee or causing a consequence in Tennessee.  To the contrary, the Complaint only alleges that certain third parties, namely Smart and his co-conspirators, committed illegal acts that caused the Forest Hill trust funds to be improperly co-mingled with the Michigan trust funds.  As the Supreme Court has required the contacts with the forum state to be established by the acts of the defendants themselves, rather than the acts of others, neither Zausmer nor MMG's actions–or lack thereof–meet the purposeful availment test for specific personal jurisdiction.  See Burger King v. Rudzeewicz, 471 U.S. 462, 475 (1985); see also Reynolds v. Int'l Amateur Ath. Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1994).

Likewise, as any relationship that Zausmer or MMG has with Tennessee was thrust upon them by the actions of Smart and his co-conspirators, Zausmer and MMG were never allowed "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Thus, exercising personal jurisdiction over Zausmer and MMG under the facts presented

in this case would create the opposite result that the Supreme Court has required, namely to ensure "that a defendant will not be haled into a jurisdiction solely as a result of *random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.*" See Burger King, 471 U.S. at 475 (emphasis added). Thus, the Court finds that neither Zausmer nor MMG purposefully availed themselves of the privileges of the State of Tennessee.[1] Accordingly, the Court RECOMMENDS that personal jurisdiction does not exist over Defendants Zausmer and MMG and further RECOMMENDS that Zausmer and MMG's Motions to Dismiss be GRANTED.

### III. Conclusion

For the reasons set forth herein, the Court RECOMMENDS that Zausmer's Motion to Dismiss be GRANTED and that MMG's Motion to Dismiss be GRANTED.

**IT IS SO ORDERED** this 13th day of November, 2009.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[1] As the Court finds that neither Zausmer nor MMG met the purposeful-availment prong for specific personal jurisdiction, the Court need not consider the arising-from prong or the reasonableness prong of the specific personal jurisdiction inquiry. Likewise, the Court must not address Zausmer's assertion that the United States Supreme Court has original and exclusive jurisdiction in the present case. See Zausmer's Mot. to Dismiss at 9-11.